UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:23-CR-21-HAB |
| | ) | |
| JALEN DRAKE | ) | |

**OPINION AND ORDER**

Defendant Jalen Drake is charged with one count of being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Despite a virtual mountain of case law to the contrary, Defendant now moves to dismiss his indictment under 18 U.S.C. § 922(g)(1) on the grounds that it is unconstitutional as applied to him under *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). (ECF No. 28). Post-*Bruen*, at the district court level, the Government has prevailed in nearly every Second Amendment challenge to Section 922(g)(1). This District has sided with the Government in every bout.

In the past, this Court has been reluctant to undertake *Bruen*'s historical analysis when dealing with Section 922(g)(1). *See United States v. Love*, 647 F. Supp. 3d 664, 670 (N.D. Ind. 2022) (noting "the problems with *Bruen*'s game of historical Where's Waldo are academic" in the context of Section 922(g)(1)). Yet the Seventh Circuit, in *Atkinson v. Garland*, instructs this Court to trudge the same historical mountain that numerous other courts have. 70 F.4th 1018, 1021-22 (7th Cir. 2023). And, once again, only the Government will reach the summit. Defendant's Motion to Dismiss (ECF No. 28) will be denied.

**I.     Factual Background**

On March 22, 2023, the Government filed a single count indictment, charging Defendant with violating 18 U.S.C. § 922(g)(1). (ECF No. 5). Section 922(g)(1) prohibits firearm possession

by a person convicted of a crime in any court punishable by a prison term exceeding one year. *See* 18 U.S.C. § 922(g)(1).

The Government alleges that on March 1, 2023, Defendant possessed a firearm. (ECF No. 5). The Government also alleges that on November 28, 2018, state authorities convicted Defendant in Allen County, Indiana, of "Dealing in Marijuana, Hash Oil, or Hashish, a felony" in "cause number 02D04-1806-F6-000716[,]" a crime "punishable by imprisonment for a term exceeding one year." (*Id.*). There is no dispute that Defendant's criminal history renders him eligible for prosecution under Section 922(g)(1). (ECF No. 37 at 10).

On August 15, 2023, Defendant filed the instant motion to dismiss his indictment based on an alleged violation of his rights under the Second Amendment of the United States Constitution. He raises the issue based on the Supreme Court's ruling in *Bruen* and the Seventh Circuit's ruling in *Atkinson*.

## II.    *Bruen* Litigation

In *Bruen*, the Supreme Court announced a new test for judging the constitutionality of firearm regulations. The Supreme Court rejected the two-step analysis that had emerged following *District of Colombia v. Heller*, 554 U.S. 570 (2008), calling it "one step too many." *Bruen*, 142 S. Ct. at 2127. Instead, the Supreme Court announced the following standard for applying the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Id*. at 2129–30 (quotations omitted). The Government carries the *Bruen* historical burden. *See e.g.*, *Atkinson*, 70 F.4th at 1019 ("The new [Second Amendment] approach anchors itself exclusively in the Second Amendment's text and the pertinent history of firearms regulation, with the Government bearing the burden of affirmatively proving that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.").

Six Judges on the *Bruen* Court emphasized that certain firearms regulations—including longstanding prohibitions on felons' possession of firearms—remain constitutional. Justice Alito's concurrence explained that *Bruen* did not "disturb anything that [the Court] said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns." 142 S. Ct. at 2157. Justice Kavanaugh, joined by Chief Justice Roberts, reiterated that longstanding prohibitions on the possession of firearms by felons remain constitutional. *Id*. at 2162. *See also id*. at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting). Nearly every federal court to consider the issue has concluded that Section 922(g)(1) remains constitutional, and this Court has unanimously agreed. *See, e.g.*, *United States v. Crawford*, 2023 WL 5559031 (N.D. Ind. 2023) (Simon, J.); *United States v. Cummings*, 2023 WL 3023608 (N.D. Ind. 2023), *United States v. Braster*, 2023 WL 2346282 (N.D. Ind. 2023), and *United States v. Clark*, 2023 WL 2346284 (N.D. Ind. 2023) (Brady, C.J.); *United States v. Rice*, 2023 WL 2560836 (N.D. Ind. Mar. 17, 2023) (DeGuilio, J.); *United States v. Tribble*, 2023 WL 2455978 (N.D. Ind. Mar. 10, 2023) (Simon, J.).

Recently, the Seventh Circuit in *Atkinson* remanded an as-applied challenge to Section 922(g)(1) brought in a civil matter by a plaintiff with a felony mail-fraud conviction "to allow the district court to undertake the *Bruen* analysis in the first instance." 70 F.4th at 1020. The court ordered the Government to further "develop its contention that the plain text of the Second

3

Amendment does not protect felons" and "conduct a more substantial historical analysis." *Id*. at 1020-24. Accordingly, the issues remain unaddressed by the Seventh Circuit Court of Appeals.

### III.   Discussion

The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. The Government first contends that felons are not "the people" protected by the plain text of Second Amendment—a question left unresolved in *Atkinson*. (ECF No. 33 at 7). If felons receive Second Amendment protection, then the Government's position is that Section 922(g)(1) falls squarely within this Nation's history and tradition of dispossessing those who fail to obey the law. (*Id.* at 11-20).

Defendant counters that "the people" includes felons such as himself. *See Range v. Att'y Gen.*, 69 F.4th 96, 103 (3d Cir. 2023) ("In sum, we reject the Government's contention that only 'law-abiding, responsible citizens' are counted among 'the people' protected by the Second Amendment."). And he contends the Government failed to satisfy their affirmative historical burden under *Bruen.* (ECF No. 37 at 10-12). To the contrary, the Government has shown that the plain text of the Second Amendment does not protect felons and, in any event, Section 922(g)(1) aligns with this Nation's history and tradition.

#### 1.   The People

The Government argues that the Second Amendment extends only to "ordinary, law-abiding citizens" who are "members of the political community." *Heller*, 554 U.S. at 580. From their perspective, the *Bruen* majority did not deviate from *Heller*'s principle that the right to keep and bear arms is "not unlimited," and deliberately and repeatedly used the phrase "law-abiding,

4

responsible citizens" to indicate that it interprets the Second Amendment to categorically exclude felons from its protection. *Id*. at 626, 635. The Government also notes that committing a felony often results in the "forfeiture of a number of rights" tied to membership in the political community, including not just the right to bear arms but also "the right to serve on a jury and the fundamental right to vote." *See Medina v. Whitaker*, 913 F.3d 152, 160 (D.C. Cir. 2019) (citing 28 U.S.C. § 1865(b)(5)) (barring convicted felons from serving on a federal jury), and *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974) (upholding state felon disenfranchisement); *see also, Spencer v. Kemna,* 523 U.S. 1, 8-9 (1998) (noting consequences of felony conviction can include deprivation of the right to hold office).

The Seventh Circuit acknowledged that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the Government could disarm 'unvirtuous citizens.'" *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010) (per curiam). And consistent with *Heller*'s principle that the right to bear arms belongs only to "law-abiding, responsible citizens*,"* *Bruen* characterized the holders of Second Amendment rights as "law-abiding" citizens no less than 14 times. *Bruen*, 142 S. Ct. 2111, 2122, 2125, 2131, 2133-34, 2135 n.8, 2138 & n.9, 2150, 2156.

Yet just this month, the Northern District of Illinois decided *United States v. Prince.* 2023 WL 7220127 (N.D. Ill. Nov. 2, 2023). In *Prince,* the court expressly rejected the notion that felons were categorically excluded because *Heller* and *Bruen*'s repeated use of the term "law-abiding" citizens:

> The court agrees with defendant that *Heller* and *Bruen* did not hold that the Second Amendment categorically protects only law-abiding citizens, despite their repeated use of such qualified language as "law abiding citizens." The *Heller* Court explained that "the people" as used throughout the Constitution "unambiguously refers to all members of the political community, not an unspecified subset." 554

5

> U.S. 570, 580 (2008). Moreover, while the *Bruen* majority determined that the New York statute at issue "violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms," 142 S. Ct. 2111, 2156 (2022), Justice Alito stated in his concurrence that *Bruen* "decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun." 142 S. Ct. 2111, 2157 (2022). The Court implicitly acknowledged that it did not conduct a thorough review of § 922(g)(1), which it directed lower courts to conduct in *Bruen*, by emphasizing that felon-dispossession statutes are only "presumptively lawful." *Heller*, 554 U.S. at 627, n. 26. (Emphasis added).
>
> Similarly, the Seventh Circuit has not resolved the issue. In *Atkinson*, the court did not decide whether the Second Amendment's plain text presumptively protects the possession of firearms by felons. Instead, it stated that "[w]e cannot resolve the issue without the benefit of more substantial briefing on remand." 70 F.4th 1018, 1023 (7th Cir. 2023). Prior to *Bruen*, however, the Seventh Circuit determined in *United States v. Meza-Rodriguez,* 798 F.3d 664, 669 (7th Cir. 2015), that "[w]hile some of *Heller*'s language does link Second Amendment rights with the notions of 'law-abiding citizens' and 'members of the political community,' those passages did not reflect an attempt to define the term 'people.'" (Internal citations omitted). *See also United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc). The court decided *Meza-Rodriguez* without the benefit of *Bruen*, but the Supreme Court specifically stated in *Bruen* that it did not disrupt *Heller*, and *Heller* is central to the court's analysis in *Meza-Rodriguez*.
>
> In light of *Meza-Rodriguez*, and the parties' briefing pursuant to *Bruen* and *Atkinson*, this court concludes that the government has not met its burden to prove that felons are excluded from "the people" whose firearm possession is presumptively protected by the plain text of the Second Amendment.

2023 WL 7220127, *5.

Moreover, the Third Circuit in *Range* provided four reasons why felons are not categorically excluded from "the people" under the Second Amendment. 69 F.4th 96. First, the criminal history of the plaintiffs in *Bruen* and *Heller* were not at issue, so *Range* considered their use of "law-abiding citizens" as simply dicta. *Id.* at 101. Second, because felons are not excluded from other constitutional provisions that use "the people," it makes little sense to categorically exclude them in the Second Amendment context unless the meaning of the phrase "the people"

6

varies from provision to provision.[1] *Id.* at 101-02. Third, the *Range* court highlighted then-Judge Barrett's dissenting opinion in *Kanter v. Barr* where she explained that "'*all* people have the right to keep and bear arms,' though the legislature may constitutionally 'strip certain groups of that right.'" *Id.* (quoting 919 F.3d 437, 452 (7th Cir. 2019) (emphasis added)). Lastly, the court found the term "law-abiding, responsible citizen" too vague and expansive, struggling to define who is a law-abiding citizen. *Id.*

*Meza-Rodriguez* and the persuasive justifications in *Range* provide some ammunition. Yet *Atkinson* acknowledged that *Meza-Rodriguez* lacked the benefit of *Bruen*'s repeated use of the phrase "law-abiding citizens." *See Atkinson*, 70 F.4th at 1023. And *Bruen* is rife with historical observations that would support the constitutionality of crime-based firearm restrictions. *Id.* at 2145 (observing that colonial firearm laws "prohibit bearing arms in a way that spreads 'fear' or 'terror' among the people"); 2150 ("[u]nder the common law, individuals could not carry deadly weapons in a manner likely to terrorize others"); 2152 (citing an 1866 South Carolina law providing "no disorderly person, vagrant, or disturber of the peace, shall be allowed to bear arms"); 2156 (noting that reasonable, well-defined restrictions on firearm possession include those that limit "the intent for which one could carry arms"); 2162 ("nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill") (quoting *Heller*, 554 U.S. at 626–27).

---

[1] "[The Constitution] mentions 'the people' twice with respect to voting for Congress, and 'the people' are recognized as having rights to assemble peaceably, to petition the government for redress, and to be protected against unreasonable searches and seizures. Unless the meaning of the phrase 'the people' varies from provision to provision—and the Supreme Court in *Heller* suggested it does not—to conclude that Range is not among 'the people' for Second Amendment purposes would exclude him from those rights as well. *See* 554 U.S. at 580. And we see no reason to adopt an inconsistent reading of 'the people.'" *Range,* 69 F.4th at 101-02.

Although *Meza-Rodriguez* may not have defined "the people" under the Second Amendment, a trilogy of Supreme Court cases do. In *Heller,* the Court expressly rejected the notion that anything in their opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ...." 554 U.S. at 626. Two years later, the Supreme Court reiterated those assurances in *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.'"). And *Bruen*'s opening statement reaffirms the Second and Fourteenth Amendment right of an "*ordinary, law-abiding* citizen to possess a handgun in the home for self-protection" recognized in *Heller* and *McDonald*. 142 S. Ct. at 2122 (emphasis added). The notion is echoed many times throughout including *Bruen*'s concluding paragraph: "New York's proper-cause requirement violates the [Constitution] in that it prevents *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2156 (emphasis added). The use of the phrase "law-abiding" hardly seems unintentional.[2]

The *Bruen* Court exercised great care in underscoring that the Second Amendment protects the rights of "law-abiding" citizens to keep and bear arms. And the Supreme Court made clear that it was reaffirming its prior holdings in *Heller* and *McDonald* which recognize that felons are not among "the people" entitled to bear arms. The Court sees no avenue for Defendant here to argue

---

[2] The same "law-abiding citizen" language is mirrored in the concurring opinions of the Justices, *see id*. at 2159 (Alito, J., concurring) ("[a]ll we decide in this case is that the Second Amendment protects the right of law-abiding people to carry a gun outside the home ... "); *i*d. at 2162 (Kavanaugh, J., concurring) ("'[n]othing in [*Bruen*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ....'").

that §922(g)(1), prohibiting his possession of a firearm as a felon (a non-law-abiding citizen), violates the Second Amendment even under *Bruen*'s new guidance. Thus, this Court finds that the Second Amendment's plain text does not protect the right of felons to possess firearms.

### 2. This Nation's History and Tradition of Firearm Regulation

Even if felons were included in "the people" contemplated by the Second Amendment, the Government has still met its burden in showing that Section 922(g)(1) is consistent with "this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

Under *Bruen*, there are two avenues of historical inquiry. The first is a "straightforward historical inquiry," which applies when "a challenged regulation addresses a general societal problem that has persisted since the 18th century." *Id*. at 2131. Courts should pinpoint evidence of "a distinctly similar historical regulation addressing that problem." *Id.* The second method of inquiry is by "analogy" since "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868." *Id.* The central considerations are whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified. *Id*. at 2132-33; *see also id*. at 2133 ("how and why the regulations burden a law-abiding citizen's right to armed self-defense"). This "analogical reasoning requires only that the Government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id*. at 2133 (emphases in original). The modern-day regulation need not be a "dead-ringer," only analogous enough to pass constitutional muster. *Id*. at 2133

The Government does not attempt to employ the "straightforward historical inquiry." Any attempt to do so would be futile. The first federal statute disqualifying certain violent felons from firearm possession was not enacted until the Federal Firearms Act in 1938—147 years after the

ratification of the Second Amendment and 70 years after the ratification of the Fourteenth Amendment. *See Skoien*, 614 F.3d at 640. And Congress did not enact a lifetime ban on firearm possession by all felons until 1961. Pub. L. 87-342, 75 Stat. 757 (1961); *See also* 18 U.S.C. § 922(g)(1). Thus, the Government must present historical analogues to show there is a tradition of limiting the right to keep and bear arms that is aligned with Section 922(g)(1).

*Atkinson* imposes on this Court the arduous task of engaging in a "proper, fulsome analysis of the historical tradition supporting § 922(g)(1)" to determine whether "modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Atkinson*, 70 F.4th at 1021–22 (7th Cir. 2023) (quoting *Bruen*, 142 S. Ct. at 2133). And there is a circuit split on the issue. *See United States v. Jackson*, 69 F.4th 495, 505– 06 (8th Cir. 2023) (determining that the nation's historical record supported the Government's ability to "prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society"); *See also Range*, 69 F.4th at 106 (holding that § 922(g)(1) was unconstitutional as applied to a defendant convicted of the felony-equivalent state offense of making a false statement to obtain food stamp assistance).

The Government's brief, like the others it has filed in this Circuit, provides a detailed basis for its belief that history and tradition limited the right of felons to keep and bear arms. *See, e.g.*, *United States v. Gates*, 2023 WL 5748362 (N.D. Ill. Sept. 6, 2023); *United States v. Hardy*, 2023 WL 6795591 (N.D. Ill. Oct. 13, 2023); *United States v. Johnson* 2023 WL 7284848 (E.D. Wis. Nov. 3, 2023); *Prince*, 2023 WL 7220127. The Government highlights two types of historical regulations that it argues are relevantly similar to Section 922(g)(1): (1) laws that categorically disqualified those who were "untrustworthy" or unwilling to obey the law from possessing

10

firearms; and (2) laws that authorized capital punishment and estate forfeiture for certain felonies. (ECF No. 33 at 11-20). *Gates* tackled these very arguments. 2023 WL 5748362.

The first category of laws, which *Gates* called "shameful," included Catholics who refused to renounce their faith, Native Americans, Blacks, and others "who failed to demonstrate loyalty to the government." *Id.* at \*6. "Although these categorical bars on possession would, of course, be unconstitutional today (and are and were shameful), the regulations do evince a historical tradition of categorically disarming groups—including those deemed 'dangerous'—at the time of the ratification of the Bill of Rights."[3] *Id.* And for the second category of laws *Gates* concluded, "[a]s a matter of logic and experience, it makes sense that these extensive and exhaustive penalties for felonies—outright capital punishment and the forfeiture of all property—qualify as powerful evidence that mere firearms dispossession of felons is a 'comparable burden,' as *Bruen* frames the standard, 142 S. Ct. at 2133, to historical punishments for felonies." *Id. Gates* found these laws constituted historical analogues.

More recently, in *Hardy*, 2023 WL 6795591, and *Johnson,* 2023 WL 7284848, two other district judges determined that the Government has met its burden of producing historical analogues to felon dispossession laws—even if such laws were not "historical twins." To the extent *Atkinson* requires a "fulsome analysis," that has been done in *Gates* and confirmed in *Hardy* and *Johnson*. This Court need not hoe the same row.

Yet *Prince* presents the outlier in this circuit.[4] 2023 WL 7220127, \*19 ("This court, however, finds that these dispossession statutes are not 'comparably justified' and do not impose

---

[3] *See also Johnoson*, 2023 WL 7284848, \*7 ("[I[t is unclear why historical firearm regulations must be ignored just because they would, today, run afoul of other constitutional provisions. Surely the *Bruen* Court knew that in rummaging through founding-era provisions judges would encounter odious racism, sexism, and religious bigotry; nothing in *Bruen* suggests that historical analogues cannot be considered just because they offend modern sensibilities.").

[4] Since *Prince,* several decisions from the Northern District of Illinois—all issued by Judge Gettleman—have come to the same conclusion based on similar rationale. *United States v. Salme-Negrete,* 2023 WL 7325888 (N.D. Ill. Nov.

11

a 'comparabl[e] burden' to § 922(g)(1)."). While Judge Gettleman agreed with the D.C. Circuit in *Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019), that "it is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms," he also agreed with *Range,* 69 F.4th at 105, that these consequences "do[ ] not suggest that the *particular* (and distinct) punishment at issue—lifetime disarmament—is rooted in our Nation's history and tradition." *Prince,* 2023 WL 7220127, *10. Our sister court took *Range* a step farther and characterized permanent disarmament as a "consequence" of felony status rather than a "punishment":

> This court would go further than *Range* and recharacterize dispossession as a "consequence" of conviction, rather than "punishment." As the Seventh Circuit determined in *Yancey*, Congress justified § 922(g)(1) with its determination that felons, as a group, cannot be trusted to follow the law. The court did not state that Congress justified felon firearm dispossession in § 922(g)(1) as *punishment* for crime. In other words, dispossession is not a "punishment" for a felon's conviction *per se*; it is a consequence of a felon's *status* as an untrustworthy, lawbreaking citizen, and his conviction not only causes this status, but is evidence of it. Conversely, historical regulations that tied an individual's felony conviction to severe consequences (capital punishment and estate forfeiture) imposed *punishment* for the individual's crime, making them distinct from § 922(g)(1).

*Id.* (citations omitted). *Prince* is a prime example of the historical hair-splitting that *Bruen* imposes on federal courts.

*Bruen* cautioned that "courts should not uphold every modern law that remotely resembles a historical analogue, because doing so risk[s] endorsing outliers that our ancestors would never have accepted." 142 S. Ct. at 2133. Yet it was equally clear that "analogical reasoning requires only that the Government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it

---

7, 2023); *United States v. Daniel*, 2023 WL 7325930 (N.D. Ill. Nov. 7, 2023); *United States v. Delaney*, 2023 WL 7325932 (N.D. Ill. Nov. 7, 2023); *United States v. Freeman*, 2023 WL 7325934 (N.D. Ill. Nov. 7, 2023).

still may be analogous enough to pass constitutional muster." *Id.* In this Court's eyes, *Prince* missed the forest by placing too much focus on the trees.

As conceded in *Gates,* "[i]t is true that the historical regulation of non-law-abiders did not specifically target *felons*, nor did the historical authorization of capital punishment and forfeiture specifically target *firearms*. So the comparability between those regulations and felon dispossession is far from perfect." 2023 WL 5748362, *28. But *Bruen* acknowledged that not all historical analogies are created equal. *Id.* ("In *Bruen*, the Supreme Court distinguished historical analogies that might be 'relatively simple to draw' versus 'other cases implicating unprecedented societal concerns or dramatic technological changes [that] may require a more nuanced approach.'"). And in *Atkinson*, the first question for district courts to consider was whether Section 922(g)(1) addresses a "general societal problem that has persisted since the 18th century?" 70 F.4th at 1023 (quoting *Bruen*, 142 S. Ct. at 2131).

Since 1791, firearms technology has advanced at a rapid pace, far outstripping the firearms-related problems that the Founding Fathers were tasked with addressing. Whereas most guns available in 1791 "could not fire more than one shot without being reloaded," modern firearms can fire multiple rounds without reloading. *Friedman v. City of Highland Park, Ill.,* 784 F.3d 406, 410 (7th Cir. 2015). And modern firearms manufacturers can produce firearms in much greater volume than in 1791. "These advancements in firearms technology—both in sheer firepower and accessibility—must be considered when deciding how close a fit the modern felon-dispossession statute must be to historical regulations that dispossessed groups of non-law-abiders (at least as perceived at the time) and that authorized broad punishment of felons (again, at least at that time)." *Gates,* 2023 WL 5748362, *30.

13

*Prince* demands a bullseye for a target that is no longer on the same playing field. "[N]othing in *Bruen* requires [the] level of specificity" that *Range* and *Prince* do. *Johnson,* 2023 WL 7284848, *7. "[C]ommon sense dictates that firearm dispossession for felons is a 'comparable burden on the right of armed self-defense' when the historical alternatives were death or surrendering one's assets." *Hardy*, 2023 WL 6795591, *6. And when "technological developments are taken into account, the government has adequately demonstrated that [Section] 922(g)(1) 'is consistent with the Nation's historical tradition of firearm regulation' and 'is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Gates,* 2023 WL 5748362, *31. The Court now goes on record as being on the side of the holding in *Gates* as confirmed by the holdings in *Hardy* and *Johnson*. The dispossession of firearms by felons is a constitutional restriction on the right to bear arms. Ample support can be found in this Nation's history and tradition.

### IV.    Conclusion

For these reasons, Defendant's motion to dismiss (ECF No. 28) is DENIED.

SO ORDERED on November 16, 2023.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT
